**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Council for Endangered Species Act Reliability, et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>Lisa P. Jackson, as Administrator of the U.S. Environmental Protection Agency, et al.,<br><br>        Defendants. | No. CV-10-8254-SMM<br><br>**ORDER** |

Before the Court is Defendants Lisa P. Jackson, U.S. Environmental Protection Agency (the "EPA"), and Jared Blumenfeld's (collectively "Defendants") Motion to Dismiss[1] (Doc. 22) Plaintiffs Council for Endangered Species Act Reliability ("CESAR") and Dr. George Yard's (collectively "Plaintiffs") Second Amended Complaint (Doc. 15).

---

[1] Both parties have submitted evidence outside of the pleadings. When a court considers matters outside the complaint on a motion to dismiss, the court typically must treat the motion as one for summary judgment. Fed. R. Civ. P. 12(b); San Pedro Hotel Co., Inc. v. City of L.A., 159 F.3d 470, 477 (9th Cir. 1998). When deciding a motion to dismiss, the court is bound by the facts pleaded in the complaint with a limited exception for exhibits that are attached to the complaint, exhibits incorporated by reference in the complaint, or matters of judicial notice. United States v. Ritchie, 342 F.3d 903, 907-08 (9th Cir. 2003); Fed. R. Civ. P. 10(c). Here, the Court relies only on the Complaint and public documents submitted by the parties that are entitled to judicial notice under Federal Rule of Evidence 201. Thus, the Court will treat it as a motion to dismiss.

Plaintiffs responded (Doc. 24), Defendants replied (Doc. 30), both parties submitted supplemental briefing (Doc. 34; Doc. 35), and the matter is now fully briefed.[2]

**BACKGROUND**

Rotenone was first registered in 1947 and has been used both as a pesticide to kill insects and as a piscicide to eliminate invasive fish species. (Doc. 15 at 8; Doc. 22 at 5.) Pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), the EPA must reregister pesticides registered prior to November 1, 1984 by issuing a Reregistration Eligibility Determination (a "RED") stating that the pesticide's active ingredient has no "unreasonable adverse effects" and is otherwise eligible for reregistration under FIFRA. 7 U.S.C. § 136; (Doc. 15 at 7; Doc. 22 at 3.) The EPA must review each pesticide every 15 years and involve the public in the process, culminating in the EPA issuing a RED. 40 C.F.R. § 155.40(a); (Doc. 15 at 7; Doc. 22 at 3.)

The issuance of a RED is governed by FIFRA § 16, which provides jurisdiction in the district court under the following circumstances:

> (a) District court review. Except as otherwise provided in this subchapter, the refusal of the Administrator to cancel or suspend a registration or to change a classification not following a hearing and other final actions of the Administrator not committed to the discretion of the Administrator by law are judicially reviewed by the district courts of the United States.

7 U.S.C. § 136n(a). Thus, jurisdiction in the district court only exists where the EPA has made a decision not following a hearing. A hearing simply requires that "notice be given of a decision to be made and presentation to the decisionmaker of the positions of those to be affected by the decision." United Farm Workers of Am. v. Adm'r, Envtl. Prot. Agency, 592 F.3d 1080, 1082 (9th Cir. 2010).

FIFRA § 16(b) provides jurisdiction in the court of appeals under the following circumstances:

---

[2] Plaintiffs requested oral argument in their Response (Doc. 24) to Defendants' Motion to Dismiss (Doc. 22). The parties have had the opportunity to submit briefing. Accordingly, the Court finds the pending motions suitable for decision without oral argument. See L.R. Civ. 7.2(f).

> (b) Review by court of appeals. In the case of actual controversy as to the validity of any order issued by the Administrator following a public hearing, any person who will be adversely affected by such order and who had been a party to the proceedings may obtain judicial review by filing in the United States court of appeals for the circuit wherein such person resides or has a place of business, within 60 days after the entry of such order, a petition paying that the order be set aside in whole or in part . . . Upon the filing of such petition the court shall have exclusive jurisdiction to affirm or set aside the order complained of in whole or in part. The court shall consider all evidence of record. The order of the Administrator shall be sustained if it is supported by substantial evidence when considered on the record as a whole.

7 U.S.C. § 136n(b). Thus, the court of appeals has jurisdiction after the EPA issues an order "following a public hearing." Id. Public hearing is construed as "proceedings in which interested parties are afforded an opportunity to present their positions by written briefs and a sufficient record is produced to allow judicial review. Nw. Food Processors v. Reilly, 886 F.2d 1075, 1077 (9th Cir. 1989).

The Endangered Species Act (the "ESA") requires federal agencies to "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species which is determined by the Secretary . . . to be critical." 16 U.S.C. § 1536(a)(2), ESA § 7(a)(2). The ESA requires the agency to consult with the United States Fish and Wildlife Services (the "FWS") or the National Marine Fisheries Service (the "NMFS") whenever the agency takes action that "may affect" a species listed or a listed species' habitat. 16 U.S.C. § 1536(a)(2), ESA § 7(a)(2); see also 50 C.F.R. § 402.14(a). ESA's citizen suit provision provides a private right of action to challenge alleged violations of the ESA in district court. 16 U.S.C. § 1540(g) ("any person may commence a civil suit on his own behalf–(A) to enjoin any person, including the United States and any other governmental instrumentality or agency . . . who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof" and that "[t]he district courts shall have jurisdiction . . . to enforce any such provision or regulation.")

On February 10, 2006, the EPA announced its intent to prepare a RED for rotenone and opened a 60-day public comment period . (Doc. 22 at 5 (citing 71 Fed. Reg. 7,041 (Feb.

10, 2006).) On March 31, 2007, after reviewing the submitted written comments and other information, the EPA issued a RED for rotenone. (Doc. 22 at 5.) On May 23, 2007, the EPA published notice that the RED was available and opened a 60-day comment period for additional input and to initiate potential amendments to the RED (Doc. 22 at 6 (citing 72 Fed. Reg. at 28,971.) On March 23, 2009, the EPA issued its response to submitted comments and revised the tables in the RED detailing labeling requirements for products containing rotenone. (Doc. 22 at 6.) Although the EPA received written comments from a variety of sources during the reregistration process, Plaintiffs did not submit any comments or otherwise participate. (Doc. 22 at 6.)

On December 22, 2010, CESAR, a non-profit organization, and Dr. George Yard, who owns ranch land in Arizona, brought suit pursuant to the ESA's citizen suit provision. (Doc. 1 at 2.) Plaintiffs' Second Amended Complaint seeks declaratory and injunctive relief on grounds that Defendants violated the ESA by failing to consult the FWS before approving the use of rotenone and by failing to ensure that the reregistration of rotenone would not jeopardize Arizona's 33 threatened and endangered species–including the Chiricahua leopard frog, spikedace, loach minnow, bonytail chub, and razorback sucker–and their habitats. (Doc. 15 at 2.) Plaintiffs also allege that the EPA failed to "compl[y] with the FIFRA prior to issuing its re-registration decision on rotenone and approving its use as an aquatic pesticide." (Doc. 15 ¶ 31.) Among the relief Plaintiffs seek is for the Court to order the EPA "to make a new re-registration eligibility decision for rotenone use" and to prohibit rotenone use affecting the endangered species. (Doc. 15 at 12.) Defendants seek to dismiss Plaintiffs' Second Amended Complaint on grounds that: (1) FIFRA provides the court of appeals with exclusive jurisdiction over such matters; and (2) Plaintiffs lack Article III standing. (Doc. 22 at 1.)

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). A party may file a motion asserting that a district court lacks jurisdiction over the subject matter under Rule 12(b)(1) of the Federal Rules of Civil

Procedure. Fed. R. Civ. P. 12(b)(1). A claim can be challenged under Rule 12(b)(1) both facially and factually. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial challenge occurs when the defendant contests the adequacy of the allegations in the pleading. See id. A factual challenge occurs when a defendant objects to the factual merits of the asserted federal jurisdiction. See id. When reviewing a Rule 12(b)(1) motion to dismiss for lack of jurisdiction, the plaintiff's complaint is construed liberally, with allegations and reasonable inferences to be drawn in plaintiff's favor. See Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004). The plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). A court may also raise the question of subject matter jurisdiction, sua sponte, at any time during the pendency of the action, even on appeal. United States v. Moreno-Morillo, 334 F.3d 819, 830 (9th Cir. 2003); see also Fed. R. Civ. P. 12(h)(3).

## DISCUSSION

**I.     Jurisdiction in the District Court**

Defendants assert that FIFRA § 16 and relevant caselaw vests exclusive jurisdiction over this matter with the court of appeals because Plaintiffs' claims are rooted in Defendants' alleged conduct during the reregistration of rotenone. (Doc. 22 at 8-10 (citing United Farm Workers, 592 F.3d 1080; Am. Bird Conservancy v. Fed. Commc'ns Comm'n, 545 F.3d 1190 (9th Cir. 2008).) In United Farm Workers, the plaintiffs challenged the EPA's reregistration of the pesticide azinphos methyl after the agency had received input from stakeholders and the public. 592 F.3d at 1081. The Court found that because the input process meant that a "public hearing" had occurred under FIFRA § 16(b), the court of appeals had jurisdiction. Id. at 1084. In American Bird, the plaintiff sued the FCC in district court alleging in part that the FCC had violated the ESA by not consulting with the Secretary of the Interior before registering communications towers. 545 F.3d at 1192. The Ninth Circuit reasoned that although the plaintiffs sued under the ESA to challenge the FCC's failure to consult, the claims substantively were attacks on the FCC's tower registration decisions, and thus the Communications Act vested exclusive subject matter jurisdiction with the court of appeals.

Id. at 1193 ("The tower registrations are therefore inextricably intertwined with the FCC's obligation to consult with the Secretary. . . . American Bird cannot elude the Communications Act's exclusive review provision by disguising its true objection to the tower registrations as a 'failure to act' claim."). In addition, Defendants assert that Ninth Circuit has held that explicit statutory provisions vesting the court of appeals with jurisdiction trump more general statutes vesting jurisdiction with the district courts, including in the context of the ESA's citizen suit provision. (Doc. 30 at 6 (citing American Bird, 545 F.3d at 1193-95; Nw. Res. Info. Ctr. v. Nat'l Marine Fisheries Serv., 25 F.3d 872, 875 (9th Cir. 1994); Cal. Save Our Streams Council, Inc. v. Yeutter, 887 F.2d 908, 911 (9th Cir. 1989)).

Plaintiffs respond that the EPA is collaterally estopped from contending that FIFRA § 16(b) provides the court of appeals with exclusive jurisdiction because the subject matter jurisdiction issue was not raised in three prior lawsuits. (Doc. 24 at 4.) Plaintiffs further rely on Washington Toxics Coalition v. EPA to support their contention that subject matter jurisdiction is established in the district court. (Doc. 24 at 7 (citing 413 F.3d 1025 (9th Cir. 2005)).) In Washington Toxics, the Ninth Circuit affirmed the plaintiff's right to sue the EPA in district court on grounds that the agency violated the ESA by refusing to consult with the NMFS before approving the registration of certain pesticides. 413 F.3d at 1029. Although the Ninth Circuit in Washington Toxics did not specifically address the interplay between the jurisdictional provisions of the ESA and FIFRA or examine FIFRA § 16(b), it did find that FIFRA does not trump the remedies that Congress made available under the ESA. Id. at 1032, 1034 (finding that FIFRA and ESA "have different but complementary purposes" and that the EPA is obligated to comply with both statutes). Plaintiffs also attempt to distinguish this case from American Bird. (Doc. 24 at 9-14.) First, Plaintiffs assert that unlike the legislation at issue in American Bird, the ESA and FIFRA are statutes with complementary purposes, and that thus FIFRA's court of appeals provision does not trump ESA's citizen suit provision. (Doc. 24 at 10.) Second, Plaintiffs state that unlike in American Bird, Plaintiffs here are not attacking a regulatory statute, but are rather challenging EPA's failure to consult

with FWS regarding how rotenone affects certain threatened and endangered species under the ESA. (Doc. 24 at 9-14.)

Defendants reply that they are not collaterally estopped from raising subject matter jurisdiction because the elements of that doctrine are not met in this case. (Doc. 30 at 2.) Further, Defendants state that <u>Washington Toxics</u> is not controlling because that case did not address jurisdictional provisions relevant to this case. (Doc. 30 at 6.) Defendants also assert that Plaintiffs' attempts to distinguish <u>American Bird</u> fail for two reasons. (Doc. 30 at 6.) First, Defendants reject Plaintiffs' argument that FIFRA's court of appeals provision will take precedence over ESA's citizen suit provision only if the statutes are "non-complementary," which Defendants attribute to Plaintiffs confusing whether an agency order has a consultation requirement and where a party can seek to enforce that consultation requirement. (Doc. 30 at 6-7.) Second, Defendants reject Plaintiffs' contention that the court of appeals is vested with jurisdiction only if the plaintiff alleges that an agency order violates a regulatory statute. (Doc. 30 at 7.) Rather, Defendants maintain, <u>American Bird</u> "holds that when the agency action allegedly triggering the duty to consult is subject to judicial review exclusively in the court of appeals, a failure-to-consult claim under the ESA must be brought in the court of appeals." (Doc. 30 at 8 (citing 545 F.3d at 1193-95).)

The Court first finds that Defendants are not collaterally estopped from challenging whether the Court has subject matter jurisdiction over this lawsuit because none of the three previous lawsuits against the EPA that Plaintiffs cite would have a preclusive effect. "[T]he doctrine of collateral estoppel can apply to preclude relitigation of both issues of law and issues of fact if those issues were conclusively determined in a prior action." <u>United States v. Stauffer Chem. Co.</u>, 464 U.S. 165, 170-71 (1984). Under the doctrine of collateral estoppel, a party cannot re-litigate an issue if: "(1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated; (3) there was final judgment on the merits; and (4) the person against whom collateral estoppel is asserted was a party to or in privity with a party in the previous action." <u>Wolfson v. Brammer</u>, 616 F.3d 1045 (9th Cir. 2010). "Collateral estoppel is inappropriate if there is any doubt as to whether

an issue was actually litigated in a prior proceeding." Eureka Fed. Svgs. & Loan Assn. v. Am. Casualty Co. of Reading, 873 F.2d 229, 233 (9th Cir. 1989).

Here, one of the three cases Plaintiffs cite has not yet reached a judgment on the merits, so collateral estoppel could not arise from it. See Ctr. Biological Diversity v. EPA, No. 11-293-JCS (N.D. Cal. filed Jan. 20, 2011). The other two cases did not involve the RED that the EPA issued for rotenone or relate to the circumstances surrounding that RED. See Ctr. Biological Diversity v. Leavitt, No. C-02-1580-JSW, 2005 WL 2277030 (N.D. Cal. filed April 2, 2002); Ctr. Biological Diversity v. EPA, No. 07-2794-JCS (N.D. Cal. filed May 30, 2007). Because there is a question of "whether an issue was actually litigated in a prior proceeding," namely the RED issued for rotenone, Defendants are not precluded from litigating the issue of subject matter jurisdiction in this case. See Eureka Fed. Svgs. & Loan Assn., 873 F.2d at 233.

However, at this stage in the litigation, the Court will not find that Plaintiffs' failure-to-consult claims under the ESA are subsumed by FIFRA's review provision under § 16(b). It is undisputed that the EPA issued its RED for rotenone "following a public hearing" as the Ninth Circuit has interpreted that phrase. See Nw. Food Processors, 886 F.2d at 1077; United Farm Workers, 592 F.3d at 1081; (Doc. 22 at 5-6; Doc. 34 at 4.) As discussed, FIFRA § 16(b) provides jurisdiction in the court of appeals in such circumstances. See 7 U.S.C. § 136n(b). However, the Court must review Plaintiffs' Complaint liberally, with allegations and reasonable inferences drawn in Plaintiffs' favor. See Wolfe, 392 F.3d at 362. Under this standard, the Court will read Plaintiffs' Complaint as a challenge under the failure to consult requirement of ESA § 7(a)(2) rather than as an attempt to artfully frame a challenge more properly brought under FIFRA § 16. Although Plaintiffs' Complaint seeks in part to overturn the RED issued by the EPA in 2007, it contains allegations that the EPA failed to consult with FWS before the issuance of the RED as required by ESA § 7(a)(2), placing Arizona's endangered species at risk. (Doc. 15); see Wash. Toxics, 413 F.3d at 1032 ("[T]he ESA affords endangered species the 'highest of priorities' in assessing risks and benefits.") (quoting Tenn. Valley Auth. v. Hill, 437 U.S. 153, 174 (1978)).

**II.     Standing**

Standing represents the constitutional requirement that every plaintiff have a personal stake in the litigation. See Ex parte Levitt, 302 U.S. 633, 636 (1937); Warth v. Seldin, 422 U.S. 490, 498 (1975). To demonstrate standing under Article III, a plaintiff must allege facts that "present the court with a 'case or controversy' in the constitutional sense and that she is a proper plaintiff to raise the issues sought to be litigated." Linda R.S. v. Richard D., 410 U.S. 614, 616 (1973); Allen v. Wright, 468 U.S. 737, 751 (1984). Meeting minimum standing requirements under Article III requires a plaintiff to allege an injury that is: (1) actual or imminent, both particularized and concrete; (2) caused by defendant's challenged action; and (3) likely to be redressed by a court's favorable decision. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). An organization may sue on behalf of its members regardless of if the organization itself has suffered an injury from the challenged action. Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 342-44 (1977). "An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 181 (2000). "The facts to show standing must be clearly apparent on the face of the complaint." Baker v. United States, 722 F.2d 517, 518 (9th Cir. 1983).

The Court will evaluate Defendants' standing challenge in light of Plaintiffs' claims. Defendants contend that neither CESAR nor Dr. Yard have made specific allegations of harm sufficient to establish standing. (Doc. 22 at 15.) Plaintiffs assert that CESAR has established organization standing as a representative of Dr. Yard, who is a member of CESAR and "has an interest in protection of endangered species in Arizona as he has an aesthetic interest in enjoying the wildlife near his home." (Doc. 24 at 16.) Plaintiffs' Complaint further states that Dr. Yard and the ranch land he owns is threatened by the reregistration of rotenone "because rotenone has already been applied to the upper Verde River upstream from Dr. Yard's ranch (in 2009), will likely be applied there again in 2010, and because at least two more Arizona

streams (West Fork of Oak Creek, upstream of Sedona, Arizona, and Redrock Canyon, upstream of Patagonia, Arizona) are currently proposed for rotenone poisoning" which will affect his "educational, moral, spiritual, scientific, recreational, biological, property, personal health, and aesthetic interests." (Doc. 15 ¶¶ 11-12.)

The Court first finds that Plaintiffs have adequately, if imperfectly, alleged injury in fact. The U.S. Supreme Court has held "that environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." Friends of the Earth, 528 U.S. at 183 (quoting Sierra Club v. Morton, 405 U.S. 727, 735 (1972)); see also Defenders of Wildlife, 504 U.S. at 562-63 ("Of course, the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing.") Here, Dr. Yard alleges that the RED issued for rotenone could result in harm to Arizona's 33 listed threatened and endangered species and their habitat, which in turn could affect his enjoyment of wildlife. (Doc. 15 ¶¶ 11-12); see Friends of the Earth, 528 U.S. at 183. Dr. Yard's concerns about the potential continuing affects of past rotenone discharges and the alleged likelihood that rotenone will be applied again is a sufficient allegation of injury. See id. Further, CESAR has standing to sue. First, at least one of CESAR's members, Dr. Yard, has standing in his own right. See Friends of the Earth, Inc., 528 U.S. at 181. Second, as stated in Plaintiffs' Complaint, CESAR is a public interest organization that conducts work related to endangered species. See id.; (Doc. 15 ¶ 10.) Third, neither the claim asserted nor the relief requested requires the permission of individual members of the lawsuit. See Friends of the Earth, Inc., 528 U.S. at 181

**CONCLUSION**

Although the Court will deny Defendants' Motion to Dismiss, if through discovery Defendants confirm that Plaintiffs' ESA claim is a mere backdoor attack on the EPA's registration decision, it would be appropriate for Defendants to again raise the issue of subject matter jurisdiction in the form of a motion for summary judgment. And although the Court finds at this phase of the litigation based on the Complaint that Plaintiffs have alleged

injury sufficient for standing, Defendants may wish to again raise the issue of standing after discovery. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" Defenders of Wildlife, 504 U.S. at 561 (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990)). However, on a motion for summary judgment "[a] plaintiff must establish that there exists no genuine issue of material fact as to justiciability or the merits." See Dep't of Commerce v. U.S. House of Representatives, 525 U.S. 316, 329 (1999).

**IT IS HEREBY ORDERED DENYING** Defendants' Motion to Dismiss (Doc. 22) Plaintiffs' Second Amended Complaint (Doc. 15).

DATED this 27th day of September, 2011.

_____
Stephen M. McNamee
United States District Judge