**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Council for Endangered Species Act Reliability, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>Lisa P. Jackson, as Administrator of the U.S. Environmental Protection Agency, et al.,<br><br>    Defendants. | No. CV-10-8254-SMM<br><br>**ORDER** |

Before the Court is Defendants Lisa P. Jackson, U.S. Environmental Protection Agency (the "EPA"), and Jared Blumenfeld's (collectively "Defendants") Motion for Reconsideration (Doc. 40) and the Motion of CropLife America to Appear as Amicus Curiae (Doc. 45). At the Court's request, Plaintiffs Council for Endangered Species Act Reliability ("CESAR") and George Yard's (collectively "Plaintiffs") filed a Response both to Defendants' Motion for Reconsideration (Doc. 49) and to CropLife America's Motion to Appear as Amicus Curiae (Doc. 50). After consideration of the issues, the Court finds the following.

## BACKGROUND

Rotenone was first registered in 1947 and has been used both as a pesticide to kill insects and as a piscicide to eliminate invasive fish species. (Doc. 15 at 8; Doc. 22 at 5.) Pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), the EPA must reregister pesticides registered prior to November 1, 1984 by issuing a Reregistration

Eligibility Determination (a "RED") stating that the pesticide's active ingredient has no "unreasonable adverse effects" and is otherwise eligible for reregistration under FIFRA. 7 U.S.C. § 136; (Doc. 15 at 7; Doc. 22 at 3.) The EPA must further review each pesticide every 15 years and involve the public in the process, culminating in the EPA issuing a RED. 40 C.F.R. § 155.40(a); (Doc. 15 at 7; Doc. 22 at 3.)

The issuance of a RED is governed by FIFRA § 16, which provides jurisdiction in the district court under the following circumstances:

> (a) District court review. Except as otherwise provided in this subchapter, the refusal of the Administrator to cancel or suspend a registration or to change a classification not following a hearing and other final actions of the Administrator not committed to the discretion of the Administrator by law are judicially reviewed by the district courts of the United States.

7 U.S.C. § 136n(a). Thus, jurisdiction in the district court only exists where the EPA has made a decision not following a hearing. A hearing simply requires that "notice be given of a decision to be made and presentation to the decisionmaker of the positions of those to be affected by the decision." United Farm Workers of Am. v. Adm'r, Envtl. Prot. Agency, 592 F.3d 1080, 1082 (9th Cir. 2010).

FIFRA § 16(b) provides jurisdiction in the court of appeals under the following circumstances:

> (b) Review by court of appeals. In the case of actual controversy as to the validity of any order issued by the Administrator following a public hearing, any person who will be adversely affected by such order and who had been a party to the proceedings may obtain judicial review by filing in the United States court of appeals for the circuit wherein such person resides or has a place of business, within 60 days after the entry of such order, a petition praying that the order be set aside in whole or in part . . . Upon the filing of such petition the court shall have exclusive jurisdiction to affirm or set aside the order complained of in whole or in part. The court shall consider all evidence of record. The order of the Administrator shall be sustained if it is supported by substantial evidence when considered on the record as a whole.

7 U.S.C. § 136n(b). Thus, the court of appeals has jurisdiction after the EPA issues an order "following a public hearing." Id. Public hearings are construed as "proceedings in which interested parties are afforded an opportunity to present their positions by written briefs and a sufficient record is produced to allow judicial review. Nw. Food Processors v. Reilly, 886 F.2d 1075, 1077 (9th Cir. 1989).

The Endangered Species Act (the "ESA") requires federal agencies to "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species which is determined by the Secretary . . . to be critical." 16 U.S.C. § 1536(a)(2), ESA § 7(a)(2). The ESA requires the agency to consult with the United States Fish and Wildlife Services (the "FWS") or the National Marine Fisheries Service (the "NMFS") whenever the agency takes action that "may affect" a species listed or a listed species' habitat. 16 U.S.C. § 1536(a)(2), ESA § 7(a)(2); see also 50 C.F.R. § 402.14(a). ESA's citizen suit provision provides a private right of action to challenge alleged violations of the ESA. 16 U.S.C. § 1540(g)(1) ("any person may commence a civil suit on his own behalf–(A) to enjoin any person, including the United States and any other governmental instrumentality or agency . . . who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof" and that "[t]he district courts shall have jurisdiction . . . to enforce any such provision or regulation.")

On February 10, 2006, the EPA announced its intent to prepare a RED for rotenone and opened a 60-day public comment period . (Doc. 22 at 5 (citing 71 Fed. Reg. 7,041 (Feb. 10, 2006).) On March 31, 2007, after reviewing the submitted written comments and other information, the EPA issued a RED for rotenone. (Doc. 22 at 5.) On May 23, 2007, the EPA published notice that the RED was available and opened a 60-day comment period for additional input and to initiate potential amendments to the RED (Doc. 22 at 6 (citing 72 Fed. Reg. at 28,971.) On March 23, 2009, the EPA issued its response to submitted comments and revised the tables in the RED detailing labeling requirements for products containing rotenone. (Doc. 22 at 6.) Although the EPA received written comments from a variety of sources during the reregistration process, Plaintiffs did not submit any comments or otherwise participate. (Doc. 22 at 6.)

On December 22, 2010, CESAR, a non-profit organization, and Dr. George Yard, who owns ranch land in Arizona, filed this action pursuant to the ESA's citizen suit provision.

1  (Doc. 1 at 2.) Plaintiffs' Second Amended Complaint seeks declaratory and injunctive relief
2  and alleges that Defendants violated the ESA by failing to consult the FWS before approving
3  the use of rotenone and by failing to ensure that the reregistration of rotenone would not
4  jeopardize Arizona's 33 threatened and endangered species–including the Chiricahua leopard
5  frog, spikedace, loach minnow, bonytail chub, and razorback sucker–and their habitats. (Doc.
6  15 at 2.) Plaintiffs also allege that the EPA failed to "compl[y] with the FIFRA prior to
7  issuing its re-registration decision on rotenone and approving its use as an aquatic pesticide."
8  (Doc. 15 ¶ 31.)  Among the relief Plaintiffs seek is for the Court to order the EPA "to make
9  a new re-registration eligibility decision for rotenone use" and to prohibit rotenone use
10 affecting the endangered species. (Doc. 15 at 12.)

11 Defendants sought to dismiss Plaintiffs' Second Amended Complaint on grounds that:
12 (1) FIFRA provides the court of appeals with exclusive jurisdiction over such matters; and
13 (2) Plaintiffs lack Article III standing. (Doc. 22 at 1.) On September 27, 2011, the Court
14 denied Defendants' Motion to Dismiss. (Doc. 36.) On October 11, 2011, Defendants filed
15 a Motion for Reconsideration of the Court's order. (Doc. 40.) On November 17, 2011,
16 Plaintiffs, at the Court's request, filed a Response to Defendants' Motion. (Doc. 49.)

## LEGAL STANDARDS

### I. Motion for Reconsideration

19 The trial court has the inherent power to reconsider, set aside, or amend interlocutory
20 orders at any time prior to entry of a final judgment. Sch. Dist. No. 5 v. Lundgren, 259 F.2d
21 101, 104-05 (9th Cir. 1958); see also John Simmons Co. v. Grier Bros. Co., 258 U.S. 82
22 (1922). Local Rule of Civil Procedure 7.2(g) permits a grant of a motion for reconsideration
23 if there is "a showing of manifest error or a showing of new facts or legal authority that could
24 not have been brought to its attention earlier with reasonable diligence." LRCiv. 7.2(g).
25 "Under the law-of-the-case doctrine, a court will not reexamine an issue previously decided
26 by the same or higher court in the same case." Lucas Auto. Eng'g, Inc. v.
27 Bridgestone/Firestone, Inc., 275 F.3d 762, 766 (9th Cir. 2001). The doctrine is not a
28 limitation on a tribunal's power, but rather a guide to discretion. Arizona v. California, 460

U.S. 605, 618 (1983). A court may have discretion to depart from the law of the case where: (1) the first decision was clearly erroneous; (2) there has been an intervening change of law; (3) the evidence is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result. United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997). A district court abuses its discretion when it applies the law-of-the-case doctrine without one of these five requisite conditions. Thomas v. Bible, 983 F.2d 152, 155 (9th Cir. 1993).

## II.    Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). A party may file a motion asserting that a district court lacks jurisdiction over the subject matter under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(1). A claim can be challenged under Rule 12(b)(1) both facially and factually. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial challenge occurs when the defendant contests the adequacy of the allegations in the pleading. See id. A factual challenge occurs when a defendant objects to the factual merits of the asserted federal jurisdiction. See id. When reviewing a Rule 12(b)(1) motion to dismiss for lack of jurisdiction, the plaintiff's complaint is construed liberally, with allegations and reasonable inferences to be drawn in plaintiff's favor. See Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004). The plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). A court may also raise the question of subject matter jurisdiction, sua sponte, at any time during the pendency of the action, even on appeal. United States v. Moreno-Morillo, 334 F.3d 819, 830 (9th Cir. 2003); see also Fed. R. Civ. P. 12(h)(3).

## DISCUSSION

## I.    Defendants' Motion for Reconsideration

Defendants ask the Court to reconsider the denial of their Motion to Dismiss on grounds that Plaintiffs in this case cannot adequately plead a failure to consult claim pursuant to § 7(a) of the Endangered Species Act separate from § 16(b) of the Federal Insecticide,

- 5 -

1  Fungicide, and Rodenticide Act ("FIFRA"), which Defendants assert vests the court of
2  appeals with exclusive jurisdiction. (Doc. 40 at 6.) Renewing their arguments that the Court
3  should make a finding on subject matter jurisdiction at the Motion to Dismiss stage,
4  Defendants ask the Court to reconsider its Motion to Dismiss.

5  The Court denied Defendants' Motion to Dismiss without fully resolving the
6  jurisdictional issue of whether FIFRA § 16(b) subsumes ESA's district court jurisdiction
7  provision in light of related Ninth Circuit caselaw. (Doc. 36.) There is apparently no
8  controlling precedent that specifically interprets the interplay between the jurisdiction
9  provisions of FIFRA § 16(b) and the ESA. Both parties agree that additional discovery will
10 not shed additional light on whether the Court has subject matter jurisdiction in this case.
11 (Doc. 40 at 7; Doc. 49 at 5 n.1.) Therefore, the Court finds that to compel the parties in this
12 case to incur the expense of discovery without resolution of this issue could result in a
13 manifest injustice. See Alexander, 106 F.3d at 876; see also Fed. R. Civ. P. 12(h)(3) ("If the
14 court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss
15 the action."). Accordingly, the Court will exercise its discretion and grant Defendants'
16 Motion for Reconsideration and consider, in light of related Ninth Circuit caselaw, whether
17 Plaintiffs have adequately pled a failure to consult claim pursuant to § 7(a) of the ESA
18 separate from FIFRA § 16(b).

19 **II.     Defendants' Motion to Dismiss**

20 Defendants assert that FIFRA § 16 and relevant caselaw vests exclusive jurisdiction
21 over this matter with the court of appeals because Plaintiffs' claims are rooted in Defendants'
22 alleged conduct during the reregistration of rotenone. (Doc. 22 at 8-10 (citing United Farm
23 Workers, 592 F.3d 1080 (9th Cir. 2010); Am. Bird Conservancy v. Fed. Commc'ns Comm'n,
24 545 F.3d 1190 (9th Cir. 2008).) In United Farm Workers, the plaintiffs challenged the EPA's
25 reregistration of the pesticide azinphos methyl after the agency had received input from
26 stakeholders and the public. 592 F.3d at 1081. The Court found that because the input
27 process meant that a "public hearing" had occurred under FIFRA § 16(b), the court of
28 appeals had jurisdiction. Id. at 1084. In American Bird, the plaintiff sued the FCC in district

court alleging in part that the FCC had violated the ESA by not consulting with the Secretary of the Interior before registering communications towers. 545 F.3d at 1192. The Ninth Circuit reasoned that although the plaintiffs sued under the ESA to challenge the FCC's failure to consult, the claims substantively were attacks on the FCC's tower registration decisions, and thus the Communications Act vested exclusive subject matter jurisdiction with the court of appeals. Id. at 1193 ("The tower registrations are therefore inextricably intertwined with the FCC's obligation to consult with the Secretary. . . . American Bird cannot elude the Communications Act's exclusive review provision by disguising its true objection to the tower registrations as a 'failure to act' claim."). In addition, Defendants assert that Ninth Circuit has held that explicit statutory provisions vesting the court of appeals with jurisdiction trump more general statutes vesting jurisdiction with the district courts, including in the context of the ESA's citizen suit provision. (Doc. 30 at 6 (citing American Bird, 545 F.3d at 1193-95; Nw. Res. Info. Ctr. v. Nat'l Marine Fisheries Serv., 25 F.3d 872, 875 (9th Cir. 1994); Cal. Save Our Streams Council, Inc. v. Yeutter, 887 F.2d 908, 911 (9th Cir. 1989)).

Along with a collateral estoppel argument that the Court rejected in its original order and will reject here, Plaintiffs relied on Washington Toxics Coalition v. EPA to support their contention that subject matter jurisdiction is established in the district court. (Doc. 24 at 7 (citing 413 F.3d 1025 (9th Cir. 2005)).) In Washington Toxics, the Ninth Circuit affirmed the plaintiff's right to sue the EPA in district court on grounds that the agency violated the ESA by refusing to consult with the NMFS before approving the registration of certain pesticides. 413 F.3d at 1029. Although the Ninth Circuit in Washington Toxics did not specifically address the interplay between the jurisdictional provisions of the ESA and FIFRA or examine FIFRA § 16(b), it did find that FIFRA does not trump the remedies that Congress made available under the ESA. Id. at 1032, 1034 (finding that FIFRA and ESA "have different but complementary purposes" and that the EPA is obligated to comply with both statutes). Plaintiffs also attempt to distinguish this case from American Bird. (Doc. 24 at 9-14.) First, Plaintiffs assert that unlike the legislation at issue in American Bird, the ESA

- 7 -

1 and FIFRA are statutes with complementary purposes, and that thus FIFRA's court of
2 appeals provision does not trump ESA's citizen suit provision. (Doc. 24 at 10.) Second,
3 Plaintiffs state that unlike in American Bird, Plaintiffs here are not attacking a regulatory
4 statute, but are rather challenging EPA's failure to consult with FWS regarding how rotenone
5 affects certain threatened and endangered species under the ESA. (Doc. 24 at 9-14.)

6 After considering these cases that are related to the issue the Court has before it, the
7 Court finds that Plaintiffs' failure-to-consult claims under the ESA are subject to FIFRA's
8 exclusive review provision under § 16(b).

9 First, it is undisputed in this case that the EPA issued its RED for rotenone "following
10 a public hearing" as the Ninth Circuit has interpreted that phrase. See Nw. Food Processors,
11 886 F.2d at 1077; United Farm Workers, 592 F.3d at 1081; (Doc. 22 at 5-6; Doc. 34 at 4.)
12 FIFRA § 16(b) provides jurisdiction in the court of appeals in such circumstances. See 7
13 U.S.C. § 136n(b).

14 Second, although Plaintiffs' lawsuit was brought under the ESA for failure to consult,
15 the allegations are rooted in Defendants' issuance of a RED for rotenone and Plaintiffs'
16 desire for a new RED regarding rotenone. (Doc. 15 at 12 (requesting that the Court "[o]rder
17 EPA to make a new re-registration eligibility decision for rotenone use.") This case is thus
18 similar to American Bird, in which the Ninth Circuit held that plaintiffs' lawsuit, alleging the
19 FCC's failure to consult before registering communications towers, was more of an attack
20 on the registration than the failure to consult. Am. Bird., 545 F.3d at 1194. Here, as in
21 American Bird and other Ninth Circuit cases, Plaintiffs' failure to consult claim is best
22 construed as a collateral attack on an agency registration triggering the jurisdictional
23 provisions of the applicable regulatory statute. See id.; Yeutter, 887 F.2d at 911; Turtle Island
24 Restoration Network v. U.S. Dep't of Commerce, 438 F.3d 937, 938 (9th Cir. 2006) ("Turtle
25 Island's claims, though 'framed . . . in terms of violations of the [Administrative Procedure
26 Act] [and environmental statutes]' were 'in actuality . . . challenge[s] to the reopening of the
27 Fishery.'" (quoting Turtle Island Restoration Network v. U.S. Dep't of Commerce, 351
28

1  F.Supp.2d 1048, 1053-54 (D. Haw. 2005))).). As such, FIFRA § 16, which governs review
2  of registration of rotenone, applies. See 7 U.S.C. § 136n.

3  Third, Plaintiffs' reliance on Washington Toxics is not persuasive, as that case did not
4  address jurisdiction provisions akin to the ones in this case. See 413 F.3d 1025. Washington
5  Toxics dealt with whether the EPA was bound by the ESA consultation requirement when
6  pesticide registrations and rescissions are governed by FIFRA. Id. at 1032 ("[A]n agency
7  cannot escape its obligation to comply with the ESA merely because it is bound to comply
8  with another statute that has consistent, complementary objectives."). The case did not
9  examine the relationship between the jurisdictional provisions of the ESA and FIFRA.

10 Fourth, FIFRA § 16 explicitly grants jurisdiction to the court of appeals for challenges
11 to a registration review. See 7 U.S.C. § 136n. This specific statute trumps the ESA, which
12 is a more generalized act governing citizen suits. See American Bird, 545 F.3d at 1193-95
13 ("[W]here one statute provides for exclusive jurisdiction in the courts of appeals and the
14 other for general jurisdiction in the district courts, jurisdiction is generally proper in the
15 courts of appeals") (citing Nw. Res. Info. Ctr., 25 F.3d at 875). Therefore, the Court will
16 dismiss this case for lack of subject matter jurisdiction.

17 Fifth, although Plaintiffs' complaint is to be construed liberally, with all allegations
18 and reasonable inferences to be drawn in Plaintiffs' favor, the Ninth Circuit in American Bird
19 held that "a plaintiff may not escape an exclusive avenue of judicial review through artful
20 pleading." American Bird, 545 F.3d at 1193 (finding that Plaintiff cannot evade exclusive
21 jurisdictional review provision by disguising its objection as a "failure to act" claim); Wolfe,
22 392 F.3d at 362. Accordingly, the Court finds that Plaintiff has not met its burden of
23 establishing jurisdiction by a preponderance of the evidence. See Lujan, 504 U.S. at 561
24 (1992).

25 **III.    CropLife America's Motion to Appear as Amicus Curiae**

26 The Court is in receipt of the Motion to Appear as Amicus Curiae filed by CropLife
27 America. (Doc. 45.) CropLife America moved to file an amicus curiae in support of
28 Defendants' Motion for Reconsideration. (Doc. 45 at 1.) Plaintiffs oppose CropLife

1 America's Request, contending that the arguments set forth in the amicus brief are irrelevant
2 to Defendants' Motion for Reconsideration (Doc. 50). As an amicus is not a representative
3 of a party and seeks to participate only for the benefit of the Court, it has long been held that
4 courts have broad discretion when deciding whether to allow the filing of amicus briefs. See,
5 e.g., N. Sec. Co. v. United States, 191 U.S. 555 (1903). Here, as the Court has granted
6 Defendants' Motion for Reconsideration without consideration of or reference to CropLife's
7 amicus brief, CropLife America's Motion to Appear as Amicus Curiae will be denied as
8 moot.

## CONCLUSION

**IT IS HEREBY ORDERED GRANTING** Defendants' Motion for Reconsideration (Doc. 40) of its prior Order (Doc. 36) regarding Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint.

**IT IS FURTHER ORDERED GRANTING** Defendants' Motion to Dismiss (Doc. 22) Plaintiffs' Second Amended Complaint (Doc. 15).

**IT IS FURTHER ORDERED DENYING** the Motion of CropLife America to Appear as Amicus Curiae (Doc. 45) as moot.

DATED this 22nd day of November, 2011.

_____
Stephen M. McNamee
United States District Judge